UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) SCOTTSDALE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff | ) ) ) | |
| V. | ) ) | CASE NO. CIV-24-150-DES |
| (1) CHIGGERS BAR, LLC; | ) ) | |
| (2) RANDALL DOLLAR; | ) ) | |
| (3) GANDY SHANE FARLEY; | ) ) | |
| (4) SCOTT GENTRY and KRISTEE GENTRY, as GUARDIANS of JOSH GENTRY | ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Scottsdale Insurance Company ("Scottsdale"), pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, files this Complaint for Declaratory Judgment against Defendants Chiggers Bar, LLC; Randall Dollar; Gandy Shane Farley; and Scott Gentry and Kristee Gentry, as guardians of Josh Gentry (collectively, "Defendants") as follows:

**NATURE OF THE CLAIM**

1. This declaratory judgment action is brought for the purpose of resolving an actual case and controversy regarding the parties' respective rights and obligations under

1

policy number CPS7482573 ("Policy") issued by Scottsdale to Chiggers Bar, LLC with respect to the lawsuit styled *Scott Gentry and Kristee Gentry, as Guardians of Josh Gentry v. Chiggers's Bar, LLC, et al.*, filed in the District Court of McCurtain County, Oklahoma (Case No. CJ-2022-61) ("Underlying Action").

2. Scottsdale seeks a declaration that the allegations in the Underlying Action against Chiggers Bar, LLC; Randall Dollar; and Gandy Shane Farley arise out of an alleged assault or battery and triggers the Policy's Assault and/or Battery Limited Liability Coverage, which is subject to a $25,000 each event and $50,000 aggregate.

## PARTIES

3. Scottsdale is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in the State of Arizona.

4. Chiggers Bar, LLC ("Chiggers") is a limited liability company organized under the laws of the State of Oklahoma with its principal place of business in McCurtain County, Oklahoma. Upon information and belief, Chiggers is a citizen of Oklahoma because its members are citizens of Oklahoma.

5. Upon information and belief, Randall Dollar ("Dollar") is a natural person and a citizen of the State of Oklahoma.

6. Upon information and belief, Gandy Shane Farley ("Farley") is a natural person and a citizen of the State of Oklahoma.

7. Upon information and belief, Scott Gentry, as guardian of Josh Gentry, is a natural person and a citizen of the State of Oklahoma.

8. Upon information and belief, Kristee Gentry, as guardian of Josh Gentry, is a natural person and a citizen of the State of Oklahoma. Scott Gentry and Kristee Gentry are collectively referred to herein as "Gentry Plaintiffs."

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Scottsdale and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10. Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(a) and 1391(b)(2) because one or more Defendants reside in this district and because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this district.

## FACTUAL BACKGROUND

11. On June 16, 2022, the Gentry Plaintiffs in their capacity as guardians of Josh Gentry filed the Underlying Action alleging that on or about March 27, 2022, Farley and Dollar physically attacked Josh Gentry ("Gentry") at Chiggers located at 242 Stevens Gap Road in McCurtain County, Oklahoma. Attached hereto as **Exhibit 1** is a true and correct copy of the operative complaint filed in the Underlying Action.

12. The Gentry Plaintiffs allege that on or about March 26 and/or 27, 2022, Gentry went to Chiggers, and "[s]ometime before 2:00 a.m. on March 27, 2022, [Gentry] and his friends intended to leave and exited the bar and walked to the parking lot." [Ex. 1, ¶¶ 11-12].

13. The Gentry Plaintiffs allege that "[w]hile in the parking lot[,] a hostile mob made up of Chigger's customers, some of which appeared to be intoxicated, and Chigger's employees, including [] Dollar and [] Farley, angrily confronted [Gentry] and his friends" and "began making threats of physical violent to [Gentry] and his friends for reasons unknown to them." [Ex. 1, ¶¶ 13-14].

14. The Gentry Plaintiffs allege while working for Chiggers, Dollar and Farley "threatened imminent physical harm" to Gentry "and caused him to be in fear of imminent physical harm and/or to suffer fright and terror." [Ex. 1, ¶¶ 24, 26].

15. The Gentry Plaintiffs also allege that "Dollar physically attacked Josh Gentry by striking him numerous times causing him injuries and damages." [Ex. 1, ¶ 25].

16. The Gentry Plaintiffs allege that Dollar and Farley's actions and/or omissions "constitute intentional assault and/or battery" and Dollar and Farley's "conduct constitutes an intentional infliction of emotional distress." [Ex. 1, ¶¶ 27, 30].

17. The Gentry Plaintiffs further allege that "[a]lternatively, . . . Dollar's and Farley's actions and/or omissions were negligent and a violation of their/his duties of care to Josh Gentry" and/or "were grossly negligent, done with reckless disregard for the right of Josh Gentry, malicious and/or lif[e] threatening." [Ex. 1 ¶¶ 31-32].

18. The Gentry Plaintiffs allege that "as an employer/principal" of Dollar and Farley, Chiggers "is vicariously liable for the[ir] negligent actions/omissions and/or wrongful conduct." [Ex. 1. ¶ 33].

19. The Gentry Plaintiffs further allege as follows:

    a. Chiggers was "negligent in its investigation, hiring, training, education and/or supervision of its employees/agents such as Defendant Dollar and Defendant Farley." [Ex. 1, ¶ 36].

    b. Chiggers "negligently served alcohol to intoxicated persons that contributed to the conditions that led to Josh Gentry's injuries." [Ex. 1, ¶ 38].

    c. Chiggers "negligently failed to provide adequate security for its customers, such as Josh Gentry, in fact, the security it provided caused the injuries to Josh Gentry." [Ex. 1, ¶ 40].

    d. Chiggers "negligently failed to maintain a reasonably safe premises for Josh Gentry and the unsafe conditions of the premises caused Josh Gentry's injuries." [Ex. 1, ¶ 42].

    e. "Josh Gentry's injuries and damages were sustained by the negligent actions and omissions of Defendant Chigger's and/or its employees/agents . . .." [Ex. 1, ¶ 43].

20.    The Gentry Plaintiffs allege that Chiggers, Dollar, Farley, and other defendants to the Underlying Action "are liable for all injuries and harms sustained by Josh Gentry," and seek damages in excess of $75,000 for his past and future physical and mental injuries, medical and other necessary expenses, lost earnings and earning capacity, and punitive and other damages. [Ex. 1, ¶¶ 49, 51].

21.    Scottsdale is currently defending Chiggers, Dollar, and Farley against the Underlying Action subject to a complete reservation of its rights.

## THE POLICY

22. Scottsdale issued the Policy to Chiggers for the period November 23, 2021 to November 23, 2022. The Policy's Declarations identify Chiggers as the only Named Insured under the Policy. Attached hereto as **Exhibit 2** is a true and correct copy of the Policy.

23. The Policy's Commercial General Liability Coverage Part provides coverage under Coverage A – Bodily Injury and Property Damage Liability ("Coverage A") with a limit of $1 million per occurrence subject to a $2 million general aggregate limit and under Coverage C – Medical Payments ("Coverage C") with a limit of $5,000 to any one person or organization subject to the Coverage A occurrence and the general aggregate limits of liability.

24. The Coverage A Insuring Agreement provides that Scottsdale "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which this insurance applies." The Coverage A Insuring Agreement further states that this "insurance applies to 'bodily injury' … only if … [t]he 'bodily injury' is caused by an 'occurrence.'"

25. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

26. The Coverage C Insuring Agreement states that Scottsdale "will pay medical expenses as described below for 'bodily injury' caused by an accident:

    **(1)**    On premises you own or rent;

    **(2)**    On ways next to premises you own or rent; or

    **(3)**    Because of your operations;

provided that:

**(a)**   The accident takes place in the "coverage territory" and during the policy period;

**(b)**   The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)**   The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

27.   The Policy's also contains a Liquor Liability Coverage Part, which generally provides coverage with a limit of $1 million for each common cause subject to a $2 million aggregate limit.

28.   The Liquor Liability Coverage Part's Insuring Agreement provides, in part, that Scottsdale agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage."

29.   The term "injury" is defined as "damages because of 'bodily injury' and 'property damage', including damages for care, loss of service or loss of support."

30.   The Policy's Commercial General Liability Coverage Part and Liquor Liability Coverage Part are modified by the Assault and/or Battery Limited Liability Coverage ("A&B Endorsement"), which provides, in part, as follows:

**ASSAULT AND/OR BATTERY LIMITED LIABILITY COVERAGE**
**(Limited to Designated Premises)**

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## ERRORS AND OMISSIONS COVERAGE PART
## LIQUOR LIABILITY COVERAGE PART

> **Designated Premises**
> 1- 242 STEVENS GAP RD, [] Broken Bow, OK, 72728, MCCURTAIN

. . .

Throughout this endorsement, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under item **3. WHO IS AN INSURED** of this endorsement.

Except as provided by this endorsement, the Policy does not apply to "injury," "bodily injury," "property damage," "damages" or "personal and advertising injury" arising from:

1. Assault and/or Battery that occurs at any premises other than the designated premises shown in the Schedule above; or

2. Assault and/or Battery that occurs away from the designated premises caused by supervision, hiring, training, organizing, or any other activities conducted on or from the designated premises shown in the Schedule above.

3. Assault and/or Battery committed by:

   a. Any insured;
   b. Any employee/"employee" of any insured; or
   c. Any other person.

4. The failure to suppress or prevent Assault and/or Battery by any person in **3.a.-c.** above;

5. The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery; or

6. The negligent:

   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Hiring;
   e. Training;
   f. Monitoring;
   g. Reporting to the proper authorities, or failure to so report; or
   h. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **3.** and **4.** above.

We will have no duty to defend any "suit" against you seeking "damages" as a consequence of any such injury unless coverage is provided by this endorsement.

31.   The A&B Endorsement's Insuring Agreements provide, in part, as follows:

**INSURING AGREEMENTS**

For the premium shown below, we agree to afford coverage with respect to Assault and/or Battery Liability only as indicated on this endorsement and subject to the provisions as set forth in this endorsement at liability limits of $25,000 Each Event and $50,000 Aggregate unless otherwise stated below:

| LIMITS OF LIABILITY | COVERAGE |
|---|---|
| $25,000 Each Event<br>$50,000 Aggregate | **Assault and/or Battery Liability** |
| $_____   TOTAL PREMIUM | |

1. **COVERAGES – ASSAULT AND/OR BATTERY LIABILITY**

   We will pay on your behalf all sums which you shall become legally obligated to pay as damages" because of "injury," "bodily injury," "property damage," damages" or "personal and advertising injury" to any

person arising out of Assault and/or Battery only if the "injury," "bodily injury," "property damage," "damages" or "personal and advertising injury";

    **a.** Takes place at the designated premises; and

    **b.** Occurs during the policy period.

We will have the right and duty to defend any suit against you seeking such "damages," even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and such settlement of any claim or suit as we deem expedient, but we shall not be obligated to pay any claim or judgment or to defend any suit after the applicable Limit of Liability shown in the endorsement has been exhausted. However, we will have no duty to defend the insured against any suit seeking "damages" to which this insurance does not apply.

32.    The A&B Endorsement's Exclusions provide that "[t]his endorsement does not apply to: . . . [a]ny claim for punitive or exemplary damages."

33.    The A&B Endorsement defines "damages" as follows:

"Damages" means a monetary judgment, award, or settlement, including damages for death, which are payable because of injury to which this insurance applies. However, damages do not include criminal restitution.

"Damages" shall not include:

    **a.** Amounts paid to you as fees or expenses for services performed which are to be reimbursed or discharged as a part of the judgment or settlement; or

    **b.** Judgments or awards arising from acts deemed uninsurable by law.

34.    The A&B Endorsement defines "event" as "an act or series of acts based on or arising out of the same assault and/or battery."

35.    The A&B Endorsement further provides, in part, as follows:

**4. LIMITS OF LIABILITY**

Regardless of the number of insureds under this policy, our liability is limited as follows:

The Limit of Liability stated in this endorsement as applicable to each "Event" is the most we will pay for all damages arising out of "injury," "bodily injury," "property damage," "personal and advertising injury" or "errors or omissions" because of assault and/or battery, regardless of the number of insureds, persons injured, claims made or suits brought or persons or organizations making claims or bringing suits. The Limit of Liability stated above as Aggregate, subject to the above provision regarding each Event, is the total limit of our liability under this coverage for all "damages" in any policy period.

36. In accordance with the above provisions, except as provided by the A&B Endorsement, no coverage is afforded under the Policy for the claims made and damages sought in the Underlying Action.

37. In accordance with the above provisions, the limit of insurance applicable to the Underlying Action is $25,000.

## COUNT I – DECLARATORY RELIEF

38. Scottsdale adopts and incorporates by reference the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

39. There is an actual, present, and existing controversy between Scottsdale and Defendants regarding the applicable limits available under the Policy in connection with the Underlying Action.

40. Pursuant to 28 USC § 2201, *et seq.*, Scottsdale seeks a judicial declaration of its rights and duties under the Policy. The Court's declaration will confer certainty on the parties and serve the interests of justice.

41. Except as provided by the A&B Endorsement, no coverage is afforded under the Policy's Commercial General Liability Coverage Part and Liquor Liability Coverage Part for the claims made and damages sought in the Underlying Action.

42. The A&B Endorsement's reduced limit of liability of $25,000 each event is the only limit applicable under the Policy for the claims made and damages sought in the Underlying Action.

43. Without any admission of liability or that the Policy provides coverage including, but not limited to, under Coverage C, Scottsdale has offered the Gentry Plaintiffs $30,000 in exchange for a full release in favor of Chiggers and any other person or entity insured under the Policy on at least three occasions.

44. The Gentry Plaintiffs, through counsel, have rejected Scottsdale's settlement offer(s).

45. Scottsdale is informed and believes that the Gentry Plaintiffs and/or Defendants dispute that the A&B Endorsement's $25,000 each event is the only limit of insurance applicable to the Underlying Action.

46. Scottsdale is informed and believes that the Gentry Plaintiffs and/or Defendants contend that Coverage A's $1 million per occurrence limit is applicable to the Underlying Action.

47. In addition to the foregoing provisions, Scottsdale pleads all other conditions, terms, warranties, limitations, definitions, and exclusions of the Policy, which also may be found to be applicable.

48. This action is ripe for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure as authorized by 28 U.S.C. § 2201. A final ruling by this Court will determine the rights and obligations of the parties and will resolve the controversy between them as to the applicable coverage and limits available under the Policy in connection with the Underlying Action.

WHEREFORE, Scottsdale respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the Policy including, but not limited to, a declaration that:

a. Except as provided by the A&B Endorsement, no coverage is provided under the Policy's Commercial General Liability Coverage Part and Liquor Liability Coverage Part for the claims made and damages sought in the Underlying Action.

b. In accordance with the A&B Endorsement, the limit of insurance applicable to all claims made and damages sought in the Underlying Action is $25,000.

c. Scottsdale be awarded such further relief as the law may require or permit.

Respectfully submitted,

*s/John H. Sparks*
John H. Sparks, OBA No. 15661
ODOM & SPARKS, PLLC
Suite 140
HiPoint Office Building
2500 McGee Drive
Norman, OK 73072
(405) 701-1863
(405) 310-5394 Facsimile
sparksj@odomsparks.com

Jay R. Sever (*pro hac vice* forthcoming)
Phelps Dunbar LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
Tel: (504) 566-1311
Fax: (504) 568-9130
jay.sever@phelps.com

Kenneth W. Boyles, Jr.  (*pro hac vice* forthcoming)
Phelps Dunbar LLP
2025 3rd Avenue North, Suite 1000
Birmingham, AL 35203
Tel: (205) 716-5200
Fax: (205) 716-5389
kenneth.boyles@phelps.com

**ATTORNEYS FOR PLAINTIFF SCOTTSDALE INSURANCE COMPANY**